UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NICHOLAS A. GLADU,                    )
                                      )
              Plaintiff               )
                                      )
      v.                              )        1:18-cv-00275-GZS
                                      )
GARY WALTZ, et al.,                   )
                                      )
              Defendants              )

**RECOMMENDED DECISION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, an inmate at the Maine State Prison, alleges that Defendants denied him

of access to written materials and deprived him of other property in violation of certain

constitutional protections.  Plaintiff alleges First Amendment and due process violations.

Defendants have moved for summary judgment.  (Motion, ECF No. 197.)

Following a review of the summary judgment record and after consideration of the

parties' arguments,[1] I recommend the Court grant Defendants' motion for summary

judgment.

---

[1] Plaintiff requested and received numerous and lengthy extensions of the deadline to file a response to the motion for summary judgment. (ECF No. 208, granted in part ECF No. 222; ECF No. 225, granted in part ECF No. 226; ECF No. 228, granted in part ECF No. 229; ECF No. 244, granted ECF No. 245.)  On August 29, 2020, nearly seven months after the filing of the motion for summary judgment, the Court denied Plaintiff's fifth request for an extension. (ECF No. 256, denied ECF No. 274.) More than a month later, Plaintiff moved to "File Re-Created Opposition to Defendants' Motion for Summary Judgment. (ECF No. 283.)  In the motion, Plaintiff represented that he had filed an opposition on July 2, 2020, but only recently learned that the Court had not received it.  Although Plaintiff's representation was inconsistent with the assertion in his request for an extension dated July 1, 2020 (ECF No. 244), that he did not have the materials necessary to file a response to the motion, the Court nevertheless allowed Plaintiff to file the re-created opposition provided he filed the opposition by October 15, 2020. (ECF No. 284.)  The Court did not receive the opposition until October 23, 2020.  While I have reviewed and considered Plaintiff's opposition despite its late filing, I have done so mindful of the applicable rules. When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts,

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the plaintiff's claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict

---

which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b)-(d) require the specific citation to record evidence. In addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend. A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules. *Ruiz Rivera v. Riley*, 209 F.3d 24, 27-28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007). "Facts contained in a supporting … statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." D. Me. Loc. R. 56(f). Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." *Id.* Finally, "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.* I have not credited the assertions in Plaintiff's statements of material fact or his statements in opposition to Defendants' statement of material facts that are unsupported by record evidence.

for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are

properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

### FACTUAL BACKGROUND

Plaintiff is an inmate in the custody of the Maine Department of Corrections

(MDOC), serving a sentence for unlawful sexual contact of a child and possession of

sexually-explicit materials.  (Defendants' Statement of Material Facts (DSMF) ¶ 4, ECF

No. 197-1.)  Defendant Waltz was the Media Review/Property Officer at Maine State

Prison until late June 2018, when Defendant Chadwick took over. (*Id*. ¶ 1.)  Defendant

Chadwick continues to serve as the Media Review/Property Officer. (*Id*. ¶ 2.)  Defendant

Black was the Grievance Review Officer in 2018 and has reviewed dozens of grievances

from Plaintiff. (*Id*. ¶ 3.)

In June 2018, the relevant portion of the MDOC policy stated:

2.  Publications and other materials . . . sent to prisoners are prohibited if they
contain any of the following:
a.  material that depicts or describes a nude child, the genitals, anus, or
buttocks of a child, or the chest of a female child;
b.  material that depicts or describes any sexual act with, sexual contact with,
or sexual touching of an animal or child;
c.  material that depicts or describes sexual violence, sadomasochism, or
bondage; * * *
e. material that depicts any sexual act involving penetration of the genitals,
mouth or anus, regardless of the genders of the persons involved; * * *
g. material that promotes hate, violence or bias; * * *
i. any other material that is determined by the Chief Administrative Officer,
or designee, to:
i)  constitute a threat to safety, security or the orderly management of the
facility;
ii)  contain sexually explicit material which, by its nature, poses a threat to
the orderly management of the facility;
iii) facilitate criminal activity; or

iv)  is substantially detrimental to a prisoner's rehabilitation, e.g., a sex offender receiving magazine containing pictures of children in underwear or otherwise not fully clothed.

(*Id*. ¶ 5.)  The policy goes on to define certain terms:

3.a. child means a person who is under 18 years of age or who appears to be or is pretending to be a child.
b.  sexual act means any act involving direct physical contact between the genitals of one and the mouth or anus of the other; [or] direct physical contact between the genitals of one and the genitals of another . . . .
c.  sexual contact means any touching of the genitals or anus, directly or through clothing, for the purpose of arousing or gratifying sexual desire; and sexual touching means any touching of the breasts, buttocks, groin, or inner thigh, directly or through clothing, for the purpose of arousing or gratifying sexual desire.

(*Id*. ¶ 6.)

In June 2018, Defendant Waltz reviewed books that Plaintiff's mother had ordered for him. (*Id.* ¶ 7.)  Defendant Waltz disallowed one of the books, because it was oversized. (*Id.* ¶ 8.)   Defendant Waltz disallowed four other books because he determined the publications contained content prohibited by MDOC policy. (*Id.* ¶ 9.)  Defendant Waltz notified Plaintiff that he would not be permitted to receive the books.  (*Id.* ¶10.)  The books were returned to the seller at Plaintiff's request for Plaintiff's mother to receive a refund. (*Id.* ¶ 12.)

Plaintiff filed a grievance based on the decision regarding the June 2018 book shipment.  (*Id.* ¶ 15.)  Defendant Black dismissed the grievance because he determined that Plaintiff failed to demonstrate that he tried to resolve the grievance informally, as required by MDOC policy and as stated on the grievance form. (*Id.* ¶ 16.)  In a subsequent letter to the Warden of the prison, Plaintiff claimed that Defendants Waltz and Chadwick

discriminated against him based on his sexual orientation.  (*Id.* ¶ 17.)  Robert Costigan, the

Prison Administrative Coordinator, reviewed the decisions regarding the books and on

behalf of the Warden, responded to the letter as follows: "Media Officer's decision to deny

your books is final[,]" because the material clearly violated MDOC policy.  (*Id.* ¶ 18.)

In response to another grievance by Plaintiff regarding the disallowed books,

Defendant Black, after reviewing copies of material contained in the books, determined

that Defendants Chadwick and Waltz had followed policy. (*Id.* ¶¶ 19, 20.)  The Warden

and the Commissioner of MDOC affirmed that decision; in response to Plaintiff's appeal,

the Commissioner noted that the books contained content in the form of sadomasochism

and bondage, which content was counter to Plaintiff's rehabilitation. (*Id.* ¶¶ 21, 53;

Affidavit of Defendant Black, Ex. 2 at 6, ECF No. 201-2.)  Plaintiff asserts that he

submitted another grievance on June 23, 2018, and that he wrote two letters to Defendant

Black in August and September 2018 about that grievance, but Defendant Black does not

recall receiving them.[2]  (*Id.* ¶ 22.)

Defendant Black received two grievances from Plaintiff in December 2018

regarding Defendant Chadwick's disallowance of a book that contained nude photos of

children.  (*Id.* ¶ 25.) Defendant Black denied the grievances.  (*Id.* ¶ 26.)  Plaintiff appealed,

---

[2] Defendant Black asserts that he does not as a practice respond to letters outside of the grievance procedure, because it would be confusing and contrary to policy, as MDOC's grievance policy expressly states that "[a]ny attempt" by an inmate "to submit a grievance by a letter or in any other way shall not be accepted." (*Id.* ¶ 23.) Defendant Black dismissed a number of Plaintiff's grievances for procedural reasons, but he responded to many of Plaintiff's grievances substantively.  (*Id.* ¶ 67.)  Neither Defendant Black nor the prison has a record of Plaintiff submitting a grievance on June 23, 2018.  (*Id.* ¶ 68.)  Defendant Black contends that he received a grievance from Plaintiff on June 18, 2018, and another on June 20, 2018, but did not receive one on June 23.  (*Id.* ¶ 69.)

and the Warden and MDOC Commissioner approved Defendant Black's denial of the grievances.  (*Id.* ¶ 27.)

In April 2018, Plaintiff received state-issued clothing from MDOC's property unit, including jeans, laundry bags, and t-shirts. (*Id.* ¶ 28.)  Throughout 2018, Plaintiff made multiple requests for items to Defendant Chadwick in his capacity as Property Officer. (*Id.* ¶ 29.)[3]  Whenever Plaintiff sent Defendant Chadwick a request for state-issued clothing, Defendant Chadwick provided the clothing, if in stock.  (*Id.* ¶ 31.)

At the end of 2018, Defendant Chadwick told Plaintiff and the officers in Plaintiff's housing unit that Plaintiff must make his property requests in writing for Defendant Chadwick to keep track of Plaintiff's requests and the property he received. (*Id.* ¶ 32.)  In a December 2018 grievance, Plaintiff claimed that Defendant Chadwick ignored his request for replacement t-shirts, socks, belt, and sneakers. (*Id.* ¶ 33.)  Defendant Black dismissed the grievance because Plaintiff had failed to comply with the informal resolution requirement.  (*Id.* ¶ 34.)

In February 2019, Defendant Chadwick issued Plaintiff replacement clothing, including laundry bags, boxers, t-shirts, and sneakers. (*Id.* ¶ 35.) In April 2019, Defendant Chadwick issued Plaintiff additional clothing, including shorts, sneakers, socks, t-shirts, khaki pants, and sweat suits. (*Id.*) In June 2019, upon Plaintiff's request, Defendant Chadwick arranged for Plaintiff to receive two pairs of shorts and four pairs of pants. (*Id.*)

---

[3] Because Plaintiff lived in the Special Management Unit, Plaintiff could not visit the property room to obtain property, he would send requests and receive property through an officer.  (DSFM ¶ 30.)

In the afternoon of July 31, 2019, Plaintiff, through the Special Management Unit Manager, asked for certain property. (*Id*. ¶ 37.) The next morning, Defendant Chadwick advised Plaintiff that he was packing up the requested items "right now." (*Id*. ¶ 38.)  That same day, Plaintiff advised Defendant Chadwick that he was missing a bag of property; Defendant Chadwick promptly responded that he did not have any more of Plaintiff's property.  (*Id*. ¶ 39.)  On August 5, Plaintiff requested replacement clothing because the clothing was not the correct size; Defendant Chadwick provided Plaintiff with different-sized clothes on August 7.  (*Id*. ¶¶  40, 41.)

On August 19, 2019, Plaintiff sent Defendant Chadwick two letters requesting a replacement CD power adapter, and Defendant Chadwick issued Plaintiff a CD player and adapter, without charge.[4]  (*Id*. ¶ 42.)  Defendant Chadwick also sent Plaintiff replacement clothing and batteries in September 2019, even though inmates are usually required to purchase batteries.  (*Id*. ¶ 44.)  In September 2019, Defendant Chadwick also issued Plaintiff two free sets of headphones, and in October 2019, Defendant Chadwick issued Plaintiff additional clothing.[5]  (*Id*. ¶¶ 45-46.)  In addition, Plaintiff gets special medical shoes from the medical department; Plaintiff has received two pairs of the shoes in the last two and a half years.  (*Id*. ¶¶ 59-60.)  Plaintiff also received state-issued sneakers in April 2018 and February 2019.  (*Id*. ¶ 61.)

---

[4] According to Defendants, Defendant Chadwick was not required to issue the items to Plaintiff.  (*Id*. ¶ 43.)

[5] Defendants contend that Plaintiff was provided new clothing, sneakers, and other property more frequently than other inmates.  (*Id*. ¶ 55.)  Many, if not most, inmates only receive one set of clothing per year.  (*Id*. ¶ 56.)  Plaintiff makes requests to Defendant Chadwick for property approximately every ten days.  (*Id*. ¶ 57.)

**DISCUSSION**

Plaintiff alleges that Defendants violated his First Amendment rights when they denied him access to the disallowed books, violated due process when they denied his access to the books, and retaliated against him by withholding his property. Plaintiff asserts his claims under 42 U.S.C. § 1983.

A claim of constitutional harm caused by a state actor, as Plaintiff has alleged in this case, is actionable under the Civil Rights Act, 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ….

42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

**A.  First Amendment Claim**

Defendants denied Plaintiff access to the materials because the materials violated MDOC policy. According to Defendants, the policy prohibits certain sexually explicit

materials to promote the rehabilitation of many of the inmates, including Plaintiff, and to provide for the safety of the inmates and prison staff.  Plaintiff contends that Defendants did not cite his rehabilitation as a basis for denying him access to the publications before Defendants filed for summary judgment. (Plaintiff's Response at 2, ECF No. 285.)

A claim for deprivation of First Amendment rights is actionable under 42 U.S.C. § 1983, "against those who, acting under color of state law, violated federal law." *Kuperman v. Wrenn*, 645 F.3d 69, 74 (1st Cir. 2011).  "[T]he right [of inmates] to receive publications free from government regulation is subject to the same limitations as speech in general, including restrictions on obscene speech." *Moses v. Dennehy*, 523 F. Supp. 2d 57, 59-60 (D. Mass. Nov. 19, 2007) (citing *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). [A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Id*. at 89-90.

The record, which includes certain pages from some of the publications and Defendants' description of the material in the publications (DSMF ¶¶ 47-51), establishes that the publications include content that is prohibited by the MDOC policy.  In addition, the concerns of prison officials about the potential impact of the content on the government's rehabilitation efforts and on the safety and security of the prison are valid. Defendants' prohibition of the publications, therefore, is in accord with the policy and is reasonably related to the government's legitimate penological interests.  *See e.g., Amatel*

*v. Reno*, 156 F.3d 192 (D.C. Cir. 1998) (upholding statute that prohibits the distribution of sexually explicit material in prisons); *Waterman v. Farmer*, 183 F.3d 208 (3d Cir. 1999) (upholding statute that banned sexually explicit material); *Jones v. Salt Lake County*, 503 F.3d 1147, 1156 (10th Cir. 2007) (prohibition of "sexually explicit material" in prison is reasonably related to legitimate government interest in "prison security and safety)." Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment claim based on Defendants' denial of access to the publications.[6]

## B. Due Process

Plaintiff claims he was denied access to the written material without due process. "To establish a procedural due process claim under § 1983, a plaintiff must [demonstrate] that [he] was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 29 (1st Cir. 2008). Ordinarily, a due process violation is complete when a deprivation is imposed through an established state procedure that does not comply with constitutional procedural standards. *Godin v. Machiasport Sch. Dep't Bd. of Directors*, 831 F. Supp. 2d 380, 389–90 (D. Me. 2011); *see also Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.").

---

[6] To the extent Plaintiff has asserted that Defendants engaged in a conspiracy to deny Plaintiff access to the publications, summary judgment in favor of Defendants is also warranted on any conspiracy claim.

Where, as here, a prisoner alleges that an individual deprived him of property through intentional misconduct (sometimes referred to as a "random, unauthorized act"), the Due Process Clause is only violated if the state does not afford meaningful postdeprivation remedies. *Hudson v. Palmer*, 468 U.S. 517, 532–33 (1984) ("[W]here a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure ... it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.") (internal quotations omitted); *see also Parrat v. Taylor*, 451 U.S. 527, 543 (1981) (affirming dismissal of due process claim where "the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure" related to the receipt of prisoner packages by mail); *Watson v. Caton*, 984 F.2d 537, 541 (1st Cir. 1993) (affirming dismissal of due process claim based on defendant's alleged destruction of "non-allowable" property that arrived at prison by mail, without providing prisoner notice and an opportunity to mail the property elsewhere).

The Maine Law Court has recognized that a prisoner can appeal to the state courts from an administrative ruling made by the Department of Corrections on the prisoner's grievance. *Fleming v. Comm'r Dep't of Corr.*, 2002 ME 74, ¶ 9, 795 A.2d 692, 695 (Maine Rule of Civil Procedure 80C(i) allows not only a review of final agency action, but also an independent claim for damages where appropriate). In addition, under the Maine Tort Claims Act, governmental entities are liable for property losses arising from the operation or maintenance of any public building.  14 M.R.S. § 8104-A(2).  Maine law thus affords an individual an adequate remedy for the intentional deprivation of personal property in

the form of a common law conversion claim. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800. Plaintiff, therefore, cannot prevail on his due process claim.

### C. First Amendment Retaliation

Plaintiff alleges Defendants retaliated against him for his grievance activity. Plaintiff maintains the Defendants deprived him of property to which he was entitled in retaliation for the grievances he filed.

Prison officials can violate the First Amendment if they retaliate against an inmate based on the inmate's participation in protected activity. To state a claim of First Amendment retaliation, an inmate must allege (1) that the inmate engaged in conduct protected by the First Amendment; (2) that the defendant took adverse action against the inmate because of the protected conduct; and (3) that the adverse action was more than de minimis, i.e., was sufficient to deter an inmate of ordinary firmness from exercising his or her first amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). "Because prisoner retaliation claims are 'easily fabricated [ ] and ... pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon*, 645 F.3d at 48 (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).

The filing of a prison grievance is considered protected activity for purposes of the First Amendment. *Hannon*, 645 F.3d at 48 ("The plaintiff, in filing his own grievances and legal actions, plainly engaged in protected activity.") Here, the record does not support

12

Plaintiff's contention that Defendants took adverse action against him due to his grievance activity. To the contrary, the uncontroverted evidence establishes that Defendants responded promptly to Plaintiff's request for property and in some instances provided Plaintiff with more property than required. Plaintiff's First Amendment retaliation claim is not supported by the record.[7]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' motion for summary judgment (ECF No. 197), and that the Court enter judgment in favor of Defendants on Plaintiff's amended complaint.

## <u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of October, 2020.

---

[7] To the extent Plaintiff contends Defendants retaliated against him when they denied him access to the publications or in the grievance process, Plaintiff's claims are also unsupported by the record.